## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

JANE DOE #1; JANE DOE #2; JOHN DOE
#1; and JOHN DOE #2, on behalf of
themselves and all others similarly situated,

        *Plaintiffs,*

    v.

RICH HOBSON, in his official capacity as
Administrative Director of Courts; and

SPENCER COLLIER, in his official capacity
as Director of the Alabama Department of
Homeland Security,

        *Defendants.*

2013 FEB -7  A 10: 58

Civil No. 2:13-cv-79-WHA

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**CLASS ACTION**

### NATURE OF THE ACTION

1.    In May 2012, the State of Alabama enacted House Bill ("HB") 658.[1]  In addition

to amending several provisions of the state's immigration law—typically referred to as "HB

56"—HB 658 added several new provisions.  One of those new provisions, Section 5 of HB 658

(codified as Ala. Code § 31-13-32), requires the Administrative Office of the Courts ("AOC") to

compile, and the Alabama Department of Homeland Security ("ADHS") to post on its public

website, the names and other identifying information of "unlawfully present alien[s]" who are

detained for any violation of state law and who then appear in a state court.

2.    Section 5 creates a publicly available registry of individuals whom AOC classifies

as "unlawfully present alien[s]," but provides no mechanism for persons so classified and

registered to contest this stigmatizing label, even if they are present with the permission of the

---

[1] A copy of the enrolled Bill is attached as Exhibit 1.

federal government or even if they are U.S. citizens. Section 5 contains no requirements that the state so much as *notify* individuals that they will be publicly identified as "unlawfully present alien[s]," much less give them an opportunity to avoid (or remove) that label.

3.　　　The permanent, inalterable, and public registry established by Section 5 will amplify the effects of other provisions of HB 56. Being publicly listed as an "unlawfully present alien" triggers a host of consequences such as the denial of bail, denial of employment opportunities, and a significant loss of privacy.

4.　　　Section 5 also undermines the confidentiality of the federal immigration registration system, allowing information that the federal government intends to be disclosed only to authorized law enforcement entities for approved law enforcement purposes to be publicly disseminated for use by non-approved agencies, and private individuals and entities.

5.　　　Section 5 facilitates and exacerbates private discrimination against immigrants and Latinos, which has been a serious problem since HB 56's enactment. Individuals targeting immigrants—especially those perceived to be here without lawful status—for harassment, discrimination, or even violence will be able to refer to a publicly available list of names furnished by the State of Alabama, organized by each of the State's sixty-seven counties and searchable by presiding state court judge.

6.　　　This action challenges Section 5 under the Supremacy Clause and the Due Process Clause of the U.S. Constitution. Section 5 unconstitutionally creates a state immigration classification; intrudes into fields reserved exclusively to the federal government; and deprives individuals of a protected liberty interest without any process for them to contest that deprivation.

2

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the U.S. Constitution and laws of the United States; and pursuant to 28 U.S.C. § 1343 because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' civil rights, and to secure equitable or other relief for the violation of those rights.

8.     This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

9.     Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b). Defendants Collier and Hobson, who are sued in their official capacities, reside in this State and are employed as State officials in Montgomery, Alabama, within this District and Division. A substantial part of the events and omissions giving rise to Plaintiffs' claims have occurred and/or will occur in this District and Division.

## PARTIES

### Plaintiffs

10.     **Plaintiff Jane Doe #1** resides in Montgomery, Alabama with her daughter, Plaintiff Jane Doe #2, and her son-in-law, Plaintiff John Doe #1.  Plaintiff Jane Doe #1 is originally from Mexico and came to the United States approximately ten years ago. She was arrested for an alleged violation of a state law prohibiting fishing without a license.  She is scheduled to appear in an Alabama state court in mid-February 2013.

11.     **Plaintiff Jane Doe #2** resides in Montgomery, Alabama with her mother, Plaintiff Jane Doe #1, and her husband, Plaintiff John Doe #1.  Plaintiff Jane Doe #1 was born in Mexico and came to the United States with her mother approximately ten years ago, when she was

3

fifteen years old. She was arrested for an alleged violation of a state law prohibiting fishing without a license. She is scheduled to appear in an Alabama state court in mid-February 2013.

12.    **Plaintiff John Doe #1** resides in Montgomery, Alabama with his wife, Plaintiff Jane Doe #2, and his mother-in-law, Plaintiff Jane Doe #1. He came to the United States from Mexico approximately eight years ago. Plaintiff John Doe #1 was arrested for an alleged violation of a state law prohibiting fishing without a license. He is scheduled to appear in an Alabama state court in mid-February 2013.

13.    **Plaintiff John Doe #2** resides in Montgomery, Alabama. He came to the United States from Mexico approximately six years ago. He resides near Plaintiffs Jane Doe #1, his aunt; Jane Doe #2, his cousin; and John Doe #1. Plaintiff John Doe #2 was arrested for an alleged violation of a state law prohibiting fishing without a license. He is scheduled to appear in an Alabama state court in mid-February 2013.

Defendants

14.    **Defendant Rich Hobson** is Administrative Director of Courts, which is the chief administrative officer of Alabama's Administrative Office of the Courts ("AOC"). The Administrative Director of Courts is responsible for carrying out the duties of the AOC, which includes preparing and submitting "a quarterly report, organized by county, to the Alabama Department of Homeland Security," that lists, *inter alia*, the names of all "unlawfully present alien[s]" who were "detained by law enforcement and appeared in court for any violation of state law." Ala. Code § 31-13-32(a). He is sued in his official capacity.

15.    **Defendant Spencer Collier** is the Director of the Alabama Department of Homeland Security ("ADHS" or "the Department"). As the head of the ADHS, he is charged with carrying out the duties of the Department, which include "publish[ing] on [the ADHS's]

4

public website in a convenient and prominent location, the information provided in the quarterly report from the Administrative Office of the Courts," and ensuring that this information is "searchable by county and presiding judge." Ala. Code § 31-13-32(b). He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### Alabama's Original Immigration Law

16.     In June 2011, the State of Alabama enacted the "Beason-Hammon Alabama Taxpayer and Citizen Protection Act" (also known as "HB 56"), the most comprehensive immigration law any state has passed to date.  As explained by one of the law's principal sponsors, Representative Mickey Hammon, Alabama's immigration law "attacks every aspect of an illegal immigrant's life" so that "[t]hey will not stay in Alabama."  The other principal sponsor, Senator Scott Beason, similarly stated that Alabama's immigration law was designed to drive certain immigrants out of the State.

17.     HB 56, as amended by HB 658, imposes various penalties—including the possibility of criminal prosecution—on individuals the State considers "unlawfully present aliens."

18.     As discussed below, some aspects of Alabama's immigration law have been preliminarily enjoined, but various other provisions remain in effect, including those that:

> a. prohibit any "business entity, employer, or public employer" from "knowingly employ[ing], hir[ing] for employment, or continu[ing] to employ an unauthorized alien to perform work within the State of Alabama," Ala. Code § 31-13-15(a);

b. prohibit, with a few exceptions, "[a]n alien who is not lawfully present in the United States" from "receiv[ing] any state or local public benefits," *id.* § 31-13-7(b);

c. disqualify "an alien unlawfully present in the United States" from being released on bail, *id.* § 31-13-18(b), or from being released from custody upon completing his or her criminal sentence, *id.* § 31-13-19;

d. require law enforcement officers, whenever they have "reasonable suspicion" that an individual "is an alien who is unlawfully present in the United States," to verify the immigration status of that individual, *id.* § 31-13-12(a); and

e. make it a felony for "[a]n alien not lawfully present in the United States" to apply for or renew a motor vehicle license plate, driver's license, nondriver identification card, business license, commercial license, or professional license, *id.* § 31-13-29.

19.    Several parts of HB 56, as amended by HB 658, have been preliminarily enjoined, including provisions that:

a. make it a crime for "unauthorized aliens" to solicit or perform work, Ala. Code § 31-13-11(a);

b. make it a crime to harbor or transport certain immigrants, *id.* § 31-13-13;

c. make it a crime to fail to carry federal immigration registration documents, *id.* § 31-13-10;

d. require public primary and secondary schools to check the immigration status of enrolling students and their parents, *id.* § 31-13-27;

6

e.  prohibit state courts from enforcing certain contracts between "an alien unlawfully present in the United States" and another party, *id.* § 31-13-26;

f.  prohibit individuals from "entering into a rental agreement . . . with an alien to provide accommodations, if the person knows or recklessly disregards the fact that the alien is unlawfully present in the United States," *id.* § 31-13-33; and

g.  create a private right of action for the "discriminatory business practice" of failing to hire a U.S. citizen or immigrant authorized to work in the United States while knowingly hiring or retaining an "unauthorized alien," *id.* § 31-13-17.

20.     Section 6 of HB 56, moreover, mandates that "[a]ll state officials, agencies, and personnel, including, but not limited to, an officer of a court of this state, . . . fully comply with and . . . support the enforcement of" Alabama's immigration laws.  Ala. Code § 31-13-6(b). Violations of Section 6 are punishable by a civil penalty of not less than $1,000 per day, with a maximum fine of $5,000 per day.  *Id.* § 31-13-6(d).

### Amending Alabama's Immigration Law: Passage of HB 658

21.     Starting in February 2012, the Alabama Legislature considered various proposals to amend HB 56.  HB 658 was not passed until May 16, 2012—the last day of the regular legislative session.

22.     The legislature did not openly advance any justification for Section 5, nor did it identify any state interest it would serve.  Section 5 was added to HB 658 by Senator Beason only hours before the bill was enacted.  Section 5 received no legislative debate or discussion; in fact, its existence was not even acknowledged on the floor of either the Senate or the House of Representatives.

7

23.     Upon information and belief, Section 5 of HB 658 was enacted with the purpose of publicly identifying and shaming individuals designated as "unlawfully present alien[s]."

24.     Upon information and belief, prior to HB 658's passage by the Legislature, Governor Bentley expressed his view to at least Senator Beason and Representative Hammon, and possibly other legislators, that Section 5 should not include individuals' names, but the legislators insisted on retaining the posting of names.

25.     After HB 658 was passed by the Legislature, but before it was signed into law, Governor Bentley publicly implored the legislators to remove that part of Section 5 that required the posting of individuals' names.  In response, Senator Beason and Representative Hammon threatened to amend Section 5 not only to require the posting of names, but individuals' pictures as well.  Shortly thereafter, on May 18, 2012, Governor Bentley signed HB 658 into law as Act No. 2012-491.

26.     HB 658 took effect immediately upon the Governor's signature.

### Text of HB 658 § 5, *codified at* Ala. Code § 31-13-32

27.     Section 5 imposes obligations upon the AOC and the ADHS.

28.     The AOC is required to develop and submit to the ADHS a quarterly report that "summarize[es] the number of cases in which an unlawfully present alien was detained by law enforcement and appeared in court for any violation of state law." Ala. Code § 31-13-32(a). The report is required to include at least the following information: the name of each "unlawfully present alien"; "[t]he violation or charge alleged to have been committed by the unlawfully present alien"; "[t]he name of the judge presiding over the case"; and "[t]he final disposition of the case, including whether the unlawfully present alien was released from custody, remained in

detention, or was transferred to the custody of the appropriate federal immigration authorities."
*Id.* § 31-13-32(a)(1)-(4).

29.     The ADHS is required "[to] publish on its public website, in a convenient and prominent location, the information provided in the quarterly report from the Administrative Office of Courts." *Id.* § 31-13-32(b). The ADHS is required to ensure that the information displayed on its public website is "searchable by county and presiding judge." *Id.*

30.     The final subsection of Section 5 states: "For the purposes of this section, the determination of whether a person is an unlawfully present alien shall be verified by the federal government pursuant to 8 U.S.C. § 1373(c)." *Id.* § 31-13-32(c).

31.     The term "unlawfully present alien" is not defined anywhere in Alabama law, nor does the term have any relevant definition in federal law.

32.     There is no system under 8 U.S.C. § 1373(c) that would enable a State to post immigration status information on the internet. To the contrary, the federal government expressly limits how that information shared with state authorities pursuant to 8 U.S.C. § 1373(c) may be disseminated, and does not authorize state or local jurisdictions receiving information from the federal government pursuant to that section to post that information online. Moreover, information collected by the federal government related to the status of aliens in the United States, regardless of immigration status, is generally considered confidential. *See, e.g.*, 8 U.S.C. § 1304(b).

33.     No federal mechanism created pursuant to 8 U.S.C. § 1373(c) will respond that a particular individual is an "unlawfully present alien," as there is no such federal classification. Nor could any such federal mechanism confirm or verify a State's decision to classify an individual as an "unlawfully present alien" under state law.

9

34.    Information about an individual provided by any system set up pursuant to 8 U.S.C. § 1373(c) is necessarily a snapshot of that person's status at some point prior to the status check, and does not provide current or reliable immigration status determinations.    Such determinations may be incorrect at the time they are made, a possibility that is frequently acknowledged by the federal government in responding to queries under to 8 U.S.C. § 1373(c). And even determinations that are theoretically correct at the time they are made may become out-of-date as the individual's status changes.    Yet Section 5 has no mechanism for removing individuals' names or information from the public website, or for any other kind of updating.

35.    Under the federal Immigration and Nationality Act, a non-citizen's immigration status may be fluid and subject to change over time.

36.    The complexity and fluidity of immigration status is a fundamental feature of federal immigration law.    It is a direct consequence of the system of immigration regulation that Congress has prescribed and accommodates many important national interests including, for example, the nation's humanitarian and international law obligations regarding the treatment of people fleeing persecution or torture.

37.    In contrast to the federal immigration code, Section 5 presumes that immigration status is definite, permanent, and readily and quickly ascertained.    These presumptions are not accurate and conflict with federal law.

38.    Because any response issued by the federal government to the State's inquiry will not answer the question posed by the state law classification—whether the individual is an "unlawfully present alien"—Section 5 requires State and/or local officials to make an independent determination of immigration status.

10

39.    Section 5 does not provide any mechanism by which individuals are notified that they have been identified as "unlawfully present alien[s]," or that they will be listed publicly as such on the ADHS's website.

40.    Section 5 does not provide any mechanism by which individuals can challenge their designation as "unlawfully present alien[s]," either prior to or after being so labeled.

41.    Section 5 does not require that those listed as "unlawfully present alien[s]" have been convicted of the crime that they were charged with committing. It also does not require that those listed have been arrested or detained lawfully.

42.    The AOC began concerted efforts to collect the information required by Section 5 in September or October of 2012. These efforts included providing a form to state law judges in order to report information on "unlawfully present alien[s]" who appeared in their courtrooms. The form does not specify how court personnel are to ascertain individuals' immigration statuses.

43.    Upon information and belief the AOC has, in accordance with Section 5's requirements, transmitted at least one report with names and other identifying information of suspected "unlawfully present alien[s]" to the ADHS.

44.    Upon information and belief, AOC will continue to transmit reports to ADHS, as required by Section 5.

45.    Although the reports required by Section 5 have yet to be posted on the internet, the ADHS website indicates that it anticipates posting such reports in the near future.

## INJURIES TO THE NAMED PLAINTIFFS

46.    In November 2012, plaintiffs Jane Doe #1, Jane Doe #2, John Doe #1, and John Doe #2 [collectively, "the Named Plaintiffs"] were arrested by law enforcement officials, taken

into custody, and charged with violating Ala. Code § 9-11-55, which prohibits nonresidents from fishing without a license.

47.    Jane Doe #2, John Doe #1, and John Doe #2 were all detained in the county jail for several hours.

48.    Jane Doe #1 was detained in the county jail for approximately two days—during which time she was denied bail—because officials from the federal Immigration and Customs Enforcement (ICE) wanted to investigate whether she had legal permission to remain in the country.

49.    Although the ICE officials determined that Jane Doe #1 did not appear to have legal permission to remain in the country, they chose not to take her into custody or to initiate removal proceedings against her as a matter of prosecutorial discretion.

50.    In mid-February 2013, all of the Named Plaintiffs are scheduled to appear in a district court for the State of Alabama located within the Middle District of Alabama on the fishing without a license charges.

51.    All of the Named Plaintiffs were born in Mexico.

52.    At this time, none of the Named Plaintiffs have documents proving that they currently have permission to reside in the United States.

53.    Pursuant to Section 5(c) and AOC policy, a State or local official will or has attempt(ed) to verify the Named Plaintiffs' immigration status through 8 U.S.C. § 1373(c).

54.    The state or local official who will or has attempt(ed) to verify the Named Plaintiffs' immigration status through 8 U.S.C. § 1373(c) has or will deem the Named Plaintiffs to fall within the State-created immigration classification of "unlawfully present alien."

55.     Pursuant to Section 5(a) and AOC policy, the Named Plaintiffs will be included in a report of "unlawfully present alien[s]" the AOC will transmit to the ADHS.

56.     Pursuant to Section 5(b), the ADHS will post the names and other identifying information of the Named Plaintiffs on its public website.

57.     If the Named Plaintiffs are classified and registered the AOC as "unlawfully present alien[s]," and/or listed on the ADHS's public website as such, they face a heightened risk, now and into the future, of:

     a. losing employment opportunities, as employers will prefer not to employ individuals publicly identified by the State of Alabama as "unlawfully present alien[s]," particularly in light of Sections 9 and 15 of HB 56, Ala. Code § 31-13-9 & 15—even if those individuals have actually obtained federal work authorization;

     b. being denied bail and/or release from custody pursuant to Sections 19 and 20 of HB 56, Ala. Code § 31-13-18 & 19;

     c. being denied "state or local public benefits" pursuant to Section 7 of HB 56, Ala. Code § 31-13-7;

     d. being arrested and/or prosecuted for a state felony if they apply for or renew a motor vehicle license plate, driver's license, nondriver identification card, business license, commercial license, or professional license, pursuant to Section 30 of HB 56, as amended by HB 658, Ala. Code § 31-13-29;

     e. being deprived of a substantial privacy interest in immigration status information;

f. being subjected to private harassment, discrimination, or even vigilantism by individuals who view the public list;

g. being subject to a host of other civil disabilities and criminal penalties should the preliminary injunction be lifted on any other provision of HB 56;

h. being permanently branded "unlawfully present alien[s]," even if they are able to obtain some immigration status that permits them to remain in the United States in the future.

## CLASS ALLEGATIONS

58.    The Named Plaintiffs are filing this Complaint as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

59.    The Named Plaintiffs request that this Court certify a class of all similarly situated individuals. The proposed class definition is: All persons who are or will be subject to Section 5 of HB 658, Ala. Code § 31-13-32.

60.    This action is properly maintained as a class action because:

(a) Joinder of all members of the class is impracticable because of the size of the proposed class. Alabama is home to approximately 165,000 immigrants— approximately 120,000 of whom currently lack lawful immigration status. It is very likely that many more than 40 such individuals in the State of Alabama have been or will be detained by law enforcement, will appear in court for a violation of state law and will run the risk of being designated as "an unlawfully present alien" under Section 5.

(b) The claims alleged on behalf of the proposed class raise questions of law and fact that are common to the class. This is a facial challenge to the validity of

Section 5. All class members will challenge the same statutory section on the same legal grounds: federal preemption (Supremacy Clause) and Due Process. All class members are subject to the same injuries: the mandatory classification, collection, and publication of their names and other identifying data pursuant to Section 5.

(c) The claims of the Named Plaintiffs are typical of the proposed class. All members of the proposed class, including the Named Plaintiffs, will be listed on the ADHS website as "unlawfully present alien[s]." If the named Plaintiffs prevail on their facial challenges to Section 5, that statutory provision will be invalid for all class members and no class member will be subject to the law's data collection and publication requirements.

(d) The proposed class representatives and class counsel will fairly and adequately represent the interests of the class. The Named Plaintiffs have no interests that are antagonistic to the interests of other members of the proposed class, and class counsel have substantial experience in civil rights and class action litigation.

61.    Class-wide declaratory and injunctive relief is appropriate for the proposed class because Defendants have acted or refuse to act on grounds generally applicable to the class a whole. Defendants have applied and will apply the same law, policy, custom, and/or practice to all class members.

### CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**U.S. Const. art. VI, cl. 2 – Supremacy Clause**
**Against All Defendants**
*On Behalf of All Plaintiffs and the Proposed Class*

15

62.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 61 above.

63.     The Supremacy Clause, Article VI, Section 2, of the U.S. Constitution provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding.

64.     The Supremacy Clause mandates that federal law preempts state law in any area over which Congress expressly or impliedly has reserved exclusive authority or which is constitutionally reserved to the federal government, or where state law conflicts or interferes with federal law. States are also forbidden from regulating immigration under the Supremacy Clause and other provisions in the Constitution.

65.     Section 5 creates a scheme to register and publicize the presence of certain non-citizens in the State of Alabama—those whom the State classifies as "unlawfully present alien[s]." In so doing, it impermissibly intrudes into the field of alien registration—a field reserved exclusively to the federal government.

66.     Section 5 impermissibly regulates immigration by creating an immigration classification—"unlawfully present alien"—that does not exist in federal law, and by requiring State and/or local officials to assign individuals to this State-created classification by making immigration status determinations that they are not trained, equipped, or permitted to make.

67.     Section 5 impermissibly conflicts with and interferes with federal immigration law by imposing state law burdens and consequences based upon a state law classification of aliens, where the federal Immigration and Nationality Act is a comprehensive federal system

16

through which Congress has delegated the determination of status and the imposition of consequences based upon status exclusively to the Executive Branch of the U.S. government.

68.    Section 5 impermissibly conflicts with and interferes with federal immigration law by undermining the federal government's deliberate decision to maintain the confidentiality of certain immigration-related documents and information.

69.    Plaintiffs move for relief on this claim directly under the Constitution and also under 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 and U.S. Const. amend. XIV, § 1, cl. 3 – Due Process Clause**
**Against All Defendants**
*On Behalf of All Plaintiffs and the Proposed Class*

70.    Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 61 above.

71.    Defendants' public identification of certain individuals as "unlawfully present alien[s]" pursuant to Section 5 would severely stigmatize those so labeled, and would alter or extinguish various rights and statuses those individuals would otherwise enjoy, including, but not limited to, the right to bail; the right to be released from criminal custody after completing a sentence or paying a fine; the right to have one's work authorization determined after being hired; the right not to lose one's job because of arbitrary state action; the right to privacy; the right to be free from public and private harassment and violence; and the right to apply for government documents and public benefits, when eligible therefor, without denial, arrest or prosecution.

72.    Section 5 does not provide notice to individuals that they will be publicly identified by Defendants as "unlawfully present alien[s]."

17

73.    Section 5 does not provide any opportunity for individuals to contest their public designation as "unlawfully present alien[s]," either before or after that designation has occurred.

74.    Section 5 deprives individuals who would be listed by Defendants as "unlawfully present alien[s]" of a liberty and/or property interest without due process of law.

75.    Defendants cannot, consistent with state and federal law, provide due process to those it wishes to publicly designate as "unlawfully present alien[s]."

76.    Defendants' enforcement of Section 5 pursuant to their official capacities as state actors under color of law and is therefore actionable under the Fourteenth Amendment through 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

(1) Certify the class as defined in the "Class Allegations" section of this Complaint;

(2) Enter a declaratory judgment finding that Defendants' enforcement of HB 658 § 5 violates the Supremacy Clause of Article VI of the U.S. Constitution and the Due Process Clause of Amendment XIV of the U.S. Constitution;.

(3) Enter appropriate injunctions enjoining Defendants from enforcing HB 658 § 5;

(4) Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(5) Order such other relief as this Court deems just and equitable.


Dated:  February 7, 2013                    Respectfully submitted,

                                            Samuel Brooke
                                            *On Behalf of Counsel for Plaintiffs*

18

Samuel Brooke (ASB-1172-L60B)
SOUTHERN POVERTY LAW
CENTER
4100 Washington Ave.
Montgomery, AL 36104
(334) 956-8200
samuel.brooke@splcenter.org

Kristi L. Graunke[+]
SOUTHERN POVERTY LAW
CENTER
233 Peachtree St. NE, Suite 2150
Atlanta, GA 30303
(404) 521-6700
kristi.graunke@splcenter.org

Cecillia D. Wang[+]
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
(415) 343-0775
cwang@aclu.org

Omar C. Jadwat[+]
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
(212) 549-2660
ojadwat@aclu.org

Justin B. Cox[+]
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
230 Peachtree Street, NW, Suite 1440
Atlanta, GA 30303-2721
(404) 523-2721
jcox@aclu.org

Linton Joaquin[+]
Karen C. Tumlin[+]
Nora Preciado[+]
NATIONAL IMMIGRATION LAW
CENTER
3435 Wilshire Blvd., Suite 2850
Los Angeles, CA 90010
(213) 674-2909
joaquin@nilc.org
tumlin@nilc.org
preciado@nilc.org

Freddy Rubio (ASB-5403-D62R)
Cooperating Attorney, ACLU OF
ALABAMA FOUNDATION
Rubio Law Firm, P.C.
438 Carr Avenue, Suite 1
Birmingham, AL 35209
(205) 443-7858
frubio@rubiofirm.com

[+] *Pro hac vice* admission to be sought.

**Counsel for Plaintiffs**