IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JANE DOE #1, *et al.*,          )
                               )
          Plaintiffs,          )
                               )
     v.                        )          CASE NO. 2:13-CV-79-WKW
                               )                    [WO]
RICH HOBSON, *et al.*,         )
                               )
          Defendants.          )

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' motion to dismiss, or in the alternative, for summary judgment, (Doc. # 20), and Plaintiffs motion for relief under Rule 56(d), (Doc. # 32).  Upon consideration of the complaint, the  parties' arguments, and the relevant law, the court finds that Defendants' motion is due to be denied and Plaintiffs' motion for relief under Rule 56(d) is due to be denied as moot.

## I.  JURISDICTION AND VENUE

The court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Personal jurisdiction and venue are uncontested.

## II.  STANDARDS OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  On a Rule

12(b)(1) facial attack, the court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

In contrast to a facial attack on subject matter jurisdiction, a Rule 12(b)(1) factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation marks omitted). When the attack is factual "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power

to hear the case." *Id.* Therefore, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Here, Defendants' first and second arguments regarding ripeness and standing are facial attacks on Plaintiffs' complaint, while Defendants' third argument, which implicates mootness doctrine and relies upon Defendants' affidavit testimonies, is a factual attack.[1]

## III. BACKGROUND

### A.   Facts

Plaintiffs Jane Doe #1, Jane Doe #2, John Doe #1, and John Doe #2 are residents of Montgomery, Alabama.  All of them were born in Mexico and moved to the United States several years ago.  Jane Doe #1 is Jane Doe #2's mother.  Jane Doe #2 is married to John Doe #1.  These three Does live together.  John Doe #2 is the nephew of Jane Doe #1 and the cousin of Jane Doe #2; he lives separately from but near the other Does.  All Plaintiffs lack "documents proving that they currently have permission to reside in the United States."  (Compl., at ¶ 52.)

---

[1] With respect to Defendants' argument that they intend not to enforce the challenged statute, the parties do not cite the 12(b)(1) factual attack standard in the briefing but appear to agree with Defendants' reliance upon the Rule 56 summary judgment standard.  But where jurisdiction is factually attacked, and the attack does not implicate the merits of the plaintiff's cause of action, a court proceeds differently than it would under either Rule 12(b)(6) or Rule 56. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citing *Lawrence*, 919 F.2d at 1529).  That is, the court weighs the evidence without presuming the truthfulness of the plaintiff's allegations or attempting to view the evidence in the light most favorable to the non-moving plaintiff.  *See id.*

Plaintiffs went fishing, allegedly without a state license to do so, and were arrested.  Jane Doe #1 was detained for approximately two days in a county jail and denied bail because federal Immigration and Customs Enforcement ("ICE") officers wished to investigate whether she had permission to remain in the United States.  The other Plaintiffs were detained in jail for several hours.  ICE officials determined that Jane Doe #1 lacked permission to remain in the United States, but exercised their discretion not to keep her in custody or to initiate removal proceedings against her.  Plaintiffs all appeared in state district court to contest the charges of fishing without licenses.  All four were convicted, but they have appealed their convictions to state circuit court.  (Doc. # 31, at 3–4; *see also* Docs. # 31-1, 31-2, 31-3, 31-4 (Plaintiffs' Declarations).)  Plaintiffs have not informed the court of further developments in the state court criminal proceedings.

Plaintiffs are suing Defendant Rich Hobson, in his official capacity as Administrative Director of Alabama's Administrative Office of Courts ("AOC"), and Defendant Spencer Collier, in his official capacity as Director of the Alabama Department of Homeland Security ("ADHS"), now part of the Alabama Law Enforcement Agency ("ALEA").[2]  Defendants are charged with enforcing various

---

[2] Mr. Collier is now the Secretary of ALEA, "which encompasses state Homeland Security functions."  (Collier Second Supp. Aff., Doc. # 47-1.)  It is not clear from the record whether the position of Secretary is the highest executive position at ALEA.  Mr. Collier represents that ALEA has replaced ADHS.  Because the statute at issue in the case identifies ADHS as the relevant agency, so will this opinion.

provisions of Section 5 of House Bill 658 ("HB 658"). Alabama's legislature enacted HB 658 in May, 2012 to amend several provisions of Alabama's controversial immigration law commonly called HB 56, which was enacted in 2011. The text of Section 5 is set out in full below.

>   (a) The [AOC] shall submit a quarterly report, organized by county, to the [ADHS] summarizing the number of cases in which an unlawfully present alien was detained by law enforcement and appeared in court for any violation of state law and shall include all of the following information in the report:

>>   (1) The name of the unlawfully present alien.

>>   (2) The violation or charge alleged to have been committed by the unlawfully present alien.

>>   (3) The name of the judge presiding over the case.

>>   (4) The final disposition of the case, including whether the unlawfully present alien was released from custody, remained in detention, or was transferred to the custody of the appropriate federal immigration authorities.

>   (b) The [ADHS] shall publish on its public website, in a convenient and prominent location, the information provided in the quarterly report from the [AOC]. The display of this information on the department's public website shall be searchable by county and presiding judge.

>   (c) For the purposes of this section, the determination of whether a person is an unlawfully present alien shall be verified by the federal government pursuant to 8 U.S.C. § 1373(c).

Ala. Code § 31-13-32.

Plaintiffs allege that Section 5 is unconstitutional under the United States Constitution's Supremacy Clause because Section 5(a) creates a state immigration classification – "unlawfully present alien," (Compl., at ¶¶ 31, 66) – and intrudes into a field reserved exclusively to the jurisdiction of the federal government by attempting to create an alien registration scheme, (Compl., at ¶ 65). Plaintiffs allege that Sections 5(a) and (b) are also unconstitutional under the Due Process Clause because they deprive persons of protected liberty interests without due process of law. Specifically, Plaintiffs contest Section 5's designation of persons who have been detained by law enforcement and appeared in state court, as unlawfully present aliens, and Section 5's creation of a registry of individuals so classified. Plaintiffs protest that Section 5 provides neither a procedure for an adversely affected person to be notified of his or her inclusion on the AOC's list, nor a means to contest his or her designation on the list or to be removed from the list.

Plaintiffs claim that because they have made court appearances, they personally will suffer various injuries if Section 5 is upheld and enforced. This is so, say Plaintiffs, because they lack documentation entitling them to be in the United States legally, Defendants have or will identify them as unlawfully present aliens, and Defendants will be obligated pursuant to Section 5 to publicize their names and status on the ADHS website. Plaintiffs claim that the State's public

registry "will amplify the effects of other provisions of HB 56." (Compl., at ¶ 3.) Further, Plaintiffs allege that Section 5 compromises confidential federal law enforcement information by disseminating it to the public, thereby invading their right to keep their information private and facilitating private discrimination against immigrants and Latinos. If they are able to obtain legal immigration status, Plaintiffs say Section 5 nonetheless will have "permanently branded" them as unlawfully present aliens. (Compl., at ¶ 57.) Plaintiffs claim that they will be subjected to various other deprivations and harms. (*See* Compl., at ¶ 57.)[3]

Mr. Collier has repeatedly asserted that ADHS "has taken no steps to implement Section 5's provisions for publication of . . . information." (Doc. # 20, at 2 (citing Collier Aff.); *see also* Docs. # 33-1 (Collier Supp. Aff.), # 47-1 (Collier Second Supp. Aff.).) Having consulted with ICE, Mr. Collier believes that if he complied with Section 5, a public registry would constitute an improper use of federal immigration information. Mr. Collier informed the State Attorney General

---

[3] The other harms named in Paragraph 57 of the Complaint besides deprivation of privacy, branding, and subjection to private harassment are: (a) lost employment opportunities; (b) denial of bail or release from custody; (c) denial of state of local public benefits; (d) arrest and prosecution for application to renew a motor vehicle license plate, driver's license, ID card, business license, commercial license, or professional license; (e) subjection to "a host of other civil disabilities and criminal penalties should the preliminary injunction be lifted on any other provision of HB 56."

When the Complaint was filed and the motion to dismiss was originally briefed, certain provisions of HB 56 had been enjoined preliminarily by order of the U.S. District Court for the Northern District of Alabama. In their supplemental brief, Defendants provide notice of the provisions of HB 56 that have been permanently enjoined. (*See* Doc. # 47 Exs. B & C.) The legal sufficiency of Plaintiffs' alleged injuries is discussed *infra* in Section IV.B.

that he would not enforce the publication aspect of Section 5(b) because doing so would jeopardize ADHS's access to federal immigration data, which it needs for law enforcement purposes. To date, the Alabama Attorney General has taken no official position in this action on enforcement of Section 5 of HB 658, but it is noted that he has vigorously defended a related law, HB 56, in other court challenges. *See, e.g.*, *Hispanic Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1240 (11th Cir. 2012); *United States v. Alabama*, 691 F.3d 1269, 1276 (11th Cir. 2012).

Plaintiffs emphasize, however, that the AOC responded to Section 5 by instructing state court judges to report court appearances of unlawfully present aliens and their alleged crimes. Mr. Hobson's stated intent is to collect information pursuant to Section 5(a), but to keep it confidential, disclosing it only to ADHS. (*See* Docs. # 20-2 (Hobson Aff.); # 33-2 (Hobson 2d Aff.).)

## B.   Procedural History

Defendants moved for dismissal, or alternatively, summary judgment (Doc. # 20.)   After thorough briefing, including a surreply, the court entered a memorandum opinion and order granting Defendants' motion to dismiss for lack of standing because Plaintiffs failed to allege that they were unlawfully present aliens. (Doc. # 38.)  Plaintiffs requested reconsideration of that ruling. The court granted Plaintiffs' motion to reconsider, reinstated the previously pending motions, and

directed the parties to submit supplemental briefing.  (Doc. # 43.)  The parties complied.  (Docs. # 47, 48.)  Defendants' motion to dismiss, or in the alternative, for summary judgment, and Plaintiffs' request for relief under Rule 56(d) are now before the court.

## IV.  DISCUSSION

Federal courts have limited jurisdiction and are constrained by Article III of the Constitution to decide only cases and controversies.  Doctrines of standing, ripeness, and mootness have developed to test whether cases are constitutionally or prudentially justiciable.  Defendants present three arguments for why Plaintiffs' case is not justiciable.  First, Defendants contend that Plaintiffs lack standing because their claims, as pleaded, are not ripe.  Second, Defendants assert that Plaintiffs lack an injury-in-fact because their alleged injuries, as pleaded, are conjectural.  Third, Defendants argue that there is no actual threat that the public reporting provision of Section 5(b) will be enforced, which the parties have categorized in the briefing as a mootness argument rather than a standing one. Each argument is addressed in turn.

## A.    Ripeness

Defendants argue that, at the time they filed their motion to dismiss, Plaintiffs had yet to make court appearances.  That argument is no longer relevant because Plaintiffs appeared in state district court.  Defendants further argue that

"Plaintiffs have no way of knowing what information the federal government might give in response to an inquiry about their immigration status." (Doc. # 20, at 5; *see also* Doc. # 33 ("[Plaintiffs] have not pled sufficient facts to create a presumption that *if* a state official inquired about Plaintiffs' immigration statuses, the federal government would say that their presence was not lawful.")

Plaintiffs respond that Defendants' argument "is illogical, particularly with regard to Jane Doe [#]1, who was told by [ICE] officials that the federal government believe[d] that she is in the country without lawful immigration status." (Doc. # 31, at 5 n.3.) Plaintiffs assert that they have not yet sustained a direct injury as a result of Defendants' enforcement of Section 5, but they "[are] in immediate danger of sustaining" an injury. *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005). They further argue that they need not wait for enforcement so long as there is "a realistic danger of sustaining a direct injury as a result of [Section 5]'s operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

The court agrees with Plaintiffs. While the ripeness doctrine implicates "both constitutional and prudential concerns," Defendants have not argued that prudential concerns "counsel judicial restraint," *Nat'l Adver. Co.*, 402 F.3d at 1339, and the court is not aware of any. As for constitutional concerns, Plaintiffs have pleaded that they are in danger of sustaining injuries if Section 5 is

enforced as written.  Because Plaintiffs were not born in the United States, because they appear to be in the United States in violation of federal law, and because ICE has already determined that Jane Doe #1 is not lawfully present, it is realistic that Defendants' enforcement of Section 5 would harm them in at least some of the ways alleged in the Complaint.  Defendants' argument that the case is unripe is without merit.

**B.    <u>Standing</u>**

To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The plaintiff's alleged injury must be both concrete and particularized and actual or imminent.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  There must be a causal connection between the injury and the defendant's conduct.  *Id.*  And it must be likely – not speculative – that the injury will be remedied by the court's decision in the plaintiff's favor.  *Id.* at 561.  The plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden" of establishing standing.  *Id.*

The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504

U.S. at 561.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim."  *Id.* (alteration omitted).

Defendants argue that Plaintiffs allege "nothing more than a general fear of Section 5's enforcement" – but not concrete and particularized injuries. Defendants say that Plaintiffs' allegations of the harm they will suffer are based entirely on speculation and assumption.

The Complaint sets out eight categories of harms that they would suffer if Section 5 is enforced, and "[t]wo of those categories detail injuries that would result directly and inexorably from Section 5 itself."  (Doc. # 31, at 7 (citing Compl., at ¶ 57).)  Plaintiffs claim they will be deprived of their privacy interest in their immigration status information and that they will be permanently branded by the State as unlawfully present aliens.  For the moment, the court focuses on these two categories of injury that Plaintiffs allege result directly from enforcement of Section 5:  an alleged invasion of privacy and deprivation of due process.

In rebutting these alleged injuries, Defendants rely on their evidence of their asserted intent not to enforce Section 5 as the Legislature passed it.  That line of argument will be separately addressed in the context of mootness doctrine.  *See infra* Part IV.C.  In the present context of standing, Defendants' arguments distract

from what matters.  The proper focus in a Rule 12(b)(1) facial challenge belongs on the Complaint – not Defendants' affidavits.  *See Lawrence*, 1529 (11th Cir. 1990).  The allegations in the Complaint must be taken as true.  *Id.*  Plaintiffs' Complaint alleges that Section 5 violates the Supremacy Clause and the Due Process Clause.  Plaintiffs assert that the State is invading the federal government's role of registering and classifying persons as aliens.[4]  Plaintiffs further allege that if the law is enforced as it was written and adopted by the Legislature, Plaintiffs' names will be publicly identified by the State as unlawfully present aliens, and they will have no means of challenging that designation before or after Defendants categorize them as unlawfully present and publish their names.

For purposes of the injury-in-fact requirement of standing, Plaintiffs must assert an actual or imminent violation of a "legally protected interest."  *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005); *see also Cone Corp. v. Fla. Dep't of Transp*., 921 F.2d 1190, 1204 (11th Cir. 1991) ("the injury must be the [alleged] deprivation of a constitutional right").  The alleged threat of a deprivation of due process – *i.e.*, Plaintiffs' complaint that they are unable to

---

[4] "The propriety of bringing a challenge for injunctive and declaratory relief on the grounds that a state law is preempted by virtue of the Supremacy Clause has gone largely unquestioned."  *Ga. Latino Alliance for Human Rights v. Governor of Ga*., 691 F.3d 1250, 1261 (11th Cir. 2012).

Defendants argue in their reply and supplemental briefing that Section 5 is not an alien registration scheme.  (*See* Doc. # 35, at 12–14.)  This argument goes to the merits – not to standing or justiciability, and it was not raised in the motion to dismiss.  Although Plaintiffs raised this issue in their response, it will not be discussed in this opinion.

contest their likely designation as unlawfully present aliens and their inclusion on the State's registry of the same – is a legally protected interest.   Likewise, Plaintiffs' privacy rights in their immigration information may also be legally protected.   *See Harris v. Thigpen*, 941 F.2d 1495, 1513 n.26 (11th Cir. 1991) (noting that "the Supreme Court has recognized for almost a century that certain rights of personal privacy do exist," including an "individual['s] interest in avoiding disclosure of personal matters . . . .).[5]   Therefore, the Complaint contains allegations that are adequate to establish an imminent injury-in-fact.

Turning to the other harms alleged in the complaint, Plaintiffs argue that enforcement of Section 5 will cause them to suffer the loss of employment prospects and denial of bail or release from custody.   These consequences are certain, say Plaintiffs, because they are mandated by HB 56.   Defendants reply that separate provisions of HB 56 – not the enforcement of Section 5 – would result in lost employment opportunities or the denial of bail.   (*See* Doc. # 33, at 9 (citing Ala. Code §§ 31-13-15 and 31-13-18).)[6]   Similarly, Defendants aver that if

---

[5] Plaintiffs concede that third parties actually might not engage in private discrimination or harassment if they have access to a list of unlawfully present aliens.  This concession has no effect on the alleged harm of loss of privacy, however, if Plaintiffs have a constitutional right to prevent the State from disclosing their immigration information.  Whether Plaintiffs actually have a privacy interest in their immigration information is not clear; the issue remains to be resolved on the merits.  For now, the alleged violation of privacy rights is enough.

[6] With respect to the denial of bail, Defendants also point out that the State has represented to the U.S. District Court for the Northern District of Alabama that, pursuant to Alabama's Constitution, Ala. Code § 31-13-18 can only be applied to deny bail to persons

14

Plaintiffs are denied public benefits or are prosecuted for attempting to enter a public records transaction with the State, it will not be because a State official made use of Section 5's report from the AOC, but rather, because a direct inquiry was made to the federal government.

Defendants' criticism is persuasive. Other provisions of HB 56 – not Section 5 – call for the consequences of denial of lawful employment, denial of bail or release, denial of public benefits, and arrest for undertaking a transaction involving public records. And each of the contested sections of HB 56 directs either the relevant state agency or a private employer to inquire with the federal government about lawful immigration status. *See* Ala. Code §§ 31-13-7(c), 31-13-15(b), 31-13-18(a), 31-13-29(c). It could be argued that, even if Plaintiffs actually endure the alleged injuries described at Paragraph 57 (a)–(d) of the Complaint, those injuries would be neither caused by Defendants' enforcement of Section 5 nor redressed by an injunction prohibiting enforcement of Section 5.

Additionally, the court is suspicious that Plaintiffs may lack standing to complain about any injuries resulting from enforcement of provisions of H.B. 56 which have not been enjoined as unconstitutional. If Plaintiffs are not lawfully present in the United States, it would seem that they presently lack a legally protected interest, under Alabama statutes, in obtaining employment, bail or

---

arrested for capital crimes. This representation has been memorialized in that court's permanent injunction. (*See* Doc. # 47-2, at 2 n.4.)

release, public benefits, or the engagement in public records transactions with the State.  Defendants have not raised this injury-in-fact issue, and in the absence of an argument from their adversaries, neither have Plaintiffs.

Yet, presuming that Section 5 is enforced and Plaintiffs are identified on the ADHS website as unlawfully present aliens, it is plausible that private employers or state agencies may rely upon the AOC's list published by the ADHS.  The court elects not to parse these suspect injuries and potential causation and redressability problems on a motion to dismiss, especially where some of the issues identified above have not been briefed.  The court prefers the resolution of disputed facts, where possible, and the crystallization of those not resolved, in order to deal with issues of law on a solid record at the summary judgment juncture.[7]

In sum, Plaintiffs have constitutional standing to bring this suit.

## C.   Mootness

Defendants' final argument is the most contentious.  Defendants represent that they "have no intention of enforcing the public disclosure provisions of Section 5."  (Doc. # 20, at 7 (citing Collier and Hobson Affs).)  Thus, they argue, the threat of injury anticipated by Plaintiffs will not materialize.

---

[7] However, with respect the alleged "host of other civil disabilities or criminal penalties [that Plaintiffs might endure] should the preliminary injunction be lifted on any other provision of HB 56," (Compl. at ¶ 57(g)), these injuries are not actual or imminent because the preliminary injunction has been made permanent by order of the Northern District of Alabama.  (*See* Docs. # 47-2, 47-3 (Stipulated Permanent Injunctions).)   Hence, any alleged injuries relating to provisions of HB 56 that have been enjoined are insufficient to confer standing.

1.     *Arguments*

Defendants rely on *Doe v. Pryor*, 344 F.3d 1282, 1283 (11th Cir. 2003), where the Eleventh Circuit affirmed a Rule 12(b)(1) dismissal for lack of standing after the defendant-Attorney General argued that he had no intention of enforcing a challenged statute.  In *Doe*, one of the plaintiffs, J.B., maintained an open lesbian relationship and lost custody of her child to her ex-husband.  In ruling in the ex-husband's favor, the Alabama Supreme Court cited Alabama's statute criminalizing deviate sexual intercourse.   J.B. and others sued the Attorney General of Alabama, challenging the statute on equal protection and freedom of expression grounds.

With respect to the equal protection claim, the Eleventh Circuit held that, assuming J.B. had pleaded cognizable injuries, J.B.'s alleged injuries were neither fairly traceable to any action taken by the Attorney General, nor redressable by a suit against the Attorney General.  *Id.* at 1285–86.  The court considered the Attorney General's position that he had neither threatened to enforce nor enforced the challenged law.  *Id.* at 1285.  The court found credible the Attorney General's assurance that he would not enforce the law based on his concession that, in the wake of the Supreme Court decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), the challenged Alabama statute was unconstitutional.  *Id.*  Similarly, with regard to the plaintiffs' First Amendment challenge, the court held that there was no credible

threat of prosecution.  *Id.* at 1287.  The court noted again that the Attorney General viewed the law to be unconstitutional in light of *Lawrence*,[8] and that even without the *Lawrence* decision, it apparently had been "years and years" since the State of Alabama had enforced the challenged law.  *Id.*  Hence, the court affirmed the dismissal of the suit for plaintiffs' lack of standing.

Here, Defendants argue that, like the Attorney General of Alabama in *Doe v. Pryor*, they are the persons charged with enforcing Section 5, they are represented by the Attorney General in this matter, and Mr. Collier has sworn to their intent not to enforce the public disclosure provisions of the law in Section 5(b).

Plaintiffs respond that Defendants are oversimplifying the significance of the holding in *Pryor*.  Plaintiffs distinguish *Pryor* in three ways.  First, there is not a binding Eleventh Circuit or Supreme Court ruling like *Lawrence* which has held that Section 5, or any virtually identical state law, is unconstitutional.  Second, unlike the Attorney General in *Pryor*, Defendants have not conceded and admittedly will not concede that Section 5 is unconstitutional.  Third, unlike the criminal statute at issue in *Pryor*, which the State had ignored for decades, Section 5 is a novel law enacted within the last two years.  Plaintiffs also emphasize that there are consequences for Defendants if they do not enforce the law.  *See* Ala.

---

[8]  *See id.* at 1283 ("[T]he statute has been declared dead by the Alabama Attorney General, who as the chief law enforcement officer of the state ought to know.").

Code § 31-13-6.[9]  Defendants' reply brief is silent in response to these specific arguments.   Plaintiffs' argument that *Pryor* is distinguishable is well-taken. Additional distinctions between *Pryor* and this case include that Alabama's Attorney General had no causal connection to the plaintiff's complained-of injury (*i.e.*, the loss of child custody), whereas here, Defendants' statutory enforcement obligations are causally connected to Plaintiffs' asserted injuries.   Moreover, the Attorney General, as the highest law enforcement officer of the State, has not weighed in here on the future enforcement of Section 5.

In addition to distinguishing Pry or, Plaintiffs characterize Defendants' non-enforcement argument as implicating mootness rather than standing.  (Doc. # 31, at 9 n.7.)  Plaintiffs contend that Defendants' representations do not constitute "the unambiguous cessation" required to moot Plaintiffs' claims.  *See Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla*., 382 F.3d 1276, 1282–86 (11th Cir. 2004) (discussing the circumstances under which a defendant's voluntary cessation of offensive conduct renders a plaintiff's case moot); *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1266–67 (11th Cir. 2010) (requiring that the termination of offensive conduct be unambiguous).    Further, Plaintiffs assert that even if Defendants' non-enforcement policy is unambiguous, Defendants only have

---

[9] As characterized by Plaintiffs, that statute "renders officials vulnerable to private party complaints and state government enforcement actions, including mandatory defunding and civil penalties" if state officials fail to enforce state law concerning unlawfully present aliens.  (Doc. # 31, at 16 n.9.)

promised not to enforce the public disclosure provisions of Section 5(b). Plaintiffs have challenged all of Section 5, including Section 5(a)'s provision for the AOC to report unlawfully present aliens to ADHS. Plaintiffs say that the public disclosure provisions of Section 5(b) are not severable from Section 5, and therefore, Plaintiffs' claims are not moot.

In reply, Defendants counter that a discussion of the mootness doctrine has applicability only where the Government actually engages in the allegedly unlawful conduct at the time the suit is filed, and later voluntarily ceases the offensive conduct during the pendency of a lawsuit. In this case, Mr. Collier has never "ceased" any offensive conduct. Instead, he decided not to enforce Section 5(b) prior to the filing of this litigation, and ADHS has never published a list of unlawfully present aliens who have appeared in Alabama's courts. Notwithstanding their doubts as to the applicability of voluntary cessation analysis, Defendants argue that the non-enforcement policy is unambiguous, the product of substantial deliberation, and consistent.

In Plaintiffs' surreply brief, they emphasize that Defendants were preparing to enforce Section 5 shortly before this suit was filed, and further, that Mr. Collier made his decision not to enforce Section 5(b) after Plaintiffs' counsel informed the State Attorney General's Office of their intent to sue. They argue that Defendants try to avoid carrying the heavy burden of showing voluntary cessation and

mootness by characterizing their mootness arguments as an attack on Plaintiffs' standing.   Finally, Plaintiffs reiterate that the Complaint's allegation that Section 5(b), as it was written by the Legislature, could be enforced immediately, must be accepted as true.

## 2.  *Analysis*

It is significant that Defendants did not argue mootness in their motion to dismiss.   (*See* Doc. # 20.)   Plaintiffs classified Defendants' non-enforcement argument as treading into mootness territory.   (*See* Doc. #21.)   Even though Defendants did not initially seek dismissal on grounds of mootness, the court has an independent obligation to review issues of justiciability, including mootness. *Doe v. Wooten*, ___ F.3d ____, 2014 WL 1363543, at *3 n.3 (11th Cir. 2014). Hence, the court will entertain the question as recast by Plaintiffs even though Defendants raise the issue differently in their motion.[10]

Ordinarily, a defendant "bears [the] heavy burden of demonstrating that his cessation of the challenged conduct renders the controversy moot."  *Rich v. Sec'y, Fla. Dep't. of Corrs*., 716 F.3d 525, 531 (11th Cir. 2013) (citing *Harrell*, 608 F.3d.

_____

[10]  Defendants have suggested that because Mr. Collier and the ADHS have never followed Section 5(b)'s directives for publication of the AOC's list of unlawfully present aliens who have been detained by law enforcement and appeared in state court, and thus have never "ceased" publication, this case seems unfit for application of the doctrine of voluntary cessation. Eleventh Circuit precedent suggests that the lack of "cessation" is not an obstacle to the court's consideration of the voluntary cessation doctrine when confronted with a mootness question.  *See Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1247 (11th Cir. 1998) (holding, in the context of a pre-enforcement challenge, that voluntary cessation defense failed to moot the case).

at 1265).   But government actors like Defendants "carry a lesser burden."   *Id.*
They must first show that the cessation of offensive conduct, or in this case, the
decision not to initiate offensive conduct, is unambiguous.   *Id.*   On this element of
the test, the timing and content of a defendant's decision are most relevant.   *Id.*
at 531–32.   Second, Defendants must demonstrate that the change in policy was the
result of substantial deliberation – not a contrived attempt to divest the court of
jurisdiction over a live controversy.   *See id.* at 532.   Finally, Defendants must show
that Mr. Collier, the proponent of the non-enforcement policy, has applied it
consistently.   *See id.*

Upon consideration of the parties' positions, the court agrees with Plaintiffs
that Mr. Collier's representations of his non-enforcement are inadequate to satisfy
the Eleventh Circuit's requirements of unambiguity.   (*See* Doc. # 48, at 6–7.)
Although Section 5 became law in May 2012, Mr. Collier did not decide that he
was not enforcing Section 5(b) until days before this suit was filed in February
2013 and within weeks of Plaintiffs' counsel's informing the State Attorney
General of Plaintiffs' intent to challenge Section 5.   Whether this was coincidental
or not, "[t]he policy change was not made before litigation was threatened."   *Rich*,
716 F.3d at 532.   Moreover, Defendants' position is not that the enforcement of
Section 5(b) would violate Plaintiffs' constitutional rights or infringe upon a field
occupied by the federal government.   Rather, Defendants' position is that ADHS's

22

law enforcement capabilities could be compromised by non-compliance with its agreement with the federal government to access and use immigration information. These also are relevant considerations that support a finding that Defendants' non-enforcement policy is ambiguous because there is little to suggest that the law will not be enforced in the future. *See id.*

Additionally, Mr. Hobson does not dispute that he intends to collect data on behalf of the AOC pursuant to Section 5(a). On the face of Section 5, Section 5(a)'s data collection provisions appear to serve no other purpose than to satisfy Section 5(b)'s public disclosure requirements. *See* Ala. Code § 31-13-32(a) (directing the AOC to compile report to be furnished to ADHS); *id.* at § 31-13-32(b) (directing ADHS to take no other action other than to "publish [the report] on its public website"). Even if Mr. Collier's position was adequate to moot Plaintiffs' claims concerning Section 5(b), Mr. Hobson will enforce Section 5(a), and Section 5(a) is, on its own, allegedly unconstitutional. Thus, even if concerns about Section 5(b) were mooted by Mr. Collier's assurances not to enforce it, complete dismissal in Defendants' favor would still be inappropriate.

In sum, Plaintiffs' challenge to Section 5 is not moot, and Defendants' motion to dismiss, or in the alternative, for summary judgment, is due to be denied. Of course, Defendants are permitted to revisit the issues of standing and mootness

again at summary judgment if additional evidence supports reevaluation of their arguments.

Because the court is not deferring ruling on the alternative motion for summary judgment, Plaintiffs' request for relief pursuant to Rule 56(d) is moot.

## V.  CONCLUSION

Accordingly, it is ORDERED that:

(1)     Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Doc. # 20) is DENIED;

(2)     Plaintiffs' motion for relief pursuant to Rule 56(d) (Doc. # 32) is DENIED as moot.

DONE this 2nd day of May, 2014.

_____
                    /s/ W. Keith Watkins
            CHIEF UNITED STATES DISTRICT JUDGE